# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FARZAD DARUI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 09-2093-RBW |
| | ) |
| UNITED STATES DEPARTMENT OF STATE, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Farzad Darui brought this action pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") for the production of certain documents maintained by the United States Department of State concerning himself. Mr. Darui made his original request through his counsel on June 17, 2008. Complaint for Declaratory Judgment and Injunctive Relief at ¶ 12 ("Compl."). Months of correspondence between Mr. Darui's representatives and the government took place after the filing of Mr. Darui's request, and as a sign of good faith, Mr. Darui substantially narrowed his request to only three items. Id. ¶¶ 13-20. However, as the months passed and the government failed to respond to even the narrowed request, plaintiff was forced to file this suit.

Nearly two years after the original FOIA request was submitted, the government finally made its processing decision and withheld in full the three responsive documents it possesses. The government has now moved for summary judgment, claiming that it has properly withheld the responsive material pursuant to FOIA Exemptions 1 and 5.

However, as will be demonstrated below, the government has not established that this material is properly withheld pursuant to the cited FOIA exemptions. As such, plaintiff respectfully requests that this Court deny the government's motion for summary judgment and order the government to release the documents at issue.

## ARGUMENT

## BACKGROUND

For many years, Farzad Darui served as the business manager of the Islamic Center in Washington, D.C. Michael Isikoff and Mark Hosenball, Terror Watch: Scandal At a Prominent Mosque, Newsweek, August 15, 2007 attached as Exhibit A. Over time, Mr. Darui had a conflict with the director of the mosque, Abdullah M. Khouj, a Saudi national. Id. In 2006, Farzad Darui was arrested by the United States Government on fraud and theft charges resulting from his employment as the manager of the Islamic Center of Washington. Spencer S. Hsu, Federal prosecutors drop theft case against Islamic Center business manager, Washington Post, August 15, 2010 ("Hsu article") attached as Exhibit B. During the trial, the government attempted to call an individual identified as Mr. Al-Bakri, the holder of a United States Green Card who was also an employee of the Saudi Arabian Embassy. See Trial Transcript, attached as Exhibit B to the Declaration of Margaret Grafeld in Support of Defendant's Motion for Summary Judgment ("Trial Transcript") at 83. Before the trial court, the government introduced letters between the State Department and the Saudi Embassy on the issue of Al-Bakri's testimony. Id. at 84,89. During these proceedings, these letters were also shown to Mr. Darui and his trial counsel. Id. at 90. Despite the government's attempts, it could not convince the jury of Mr. Darui's guilt; the trial resulted in a hung jury. Hsu

2

article, Exhibit B.  The United States Government eventually dismissed the charges against Mr. Darui.  Id.

Through his legal counsel, Mr. Darui requested material pursuant to the FOIA pertaining to himself from the United States Department of State on June 17, 2008.  Compl., ¶ 12.  On October 2, 2008, Mr. Darui narrowed his request to only the following three areas of material:

> 1.) a communication in May 2008, specifically a letter, from the State Department to the Department of Justice regarding Farzad Darui;
>
> 2.) any communications between the State Department and the Royal Embassy to Saudi Arabia regarding Farzad Darui during the time period of August 2006 through present; and
>
> 3.) any communications between the State Departmetn and the Islamic Center of Washington, D.C. regarding Farzad Darui during the time period of August 2006 through the present.

Id., ¶ 18.

Despite this narrowing of his request, the State Department was still unwilling or unable to complete the processing of Mr. Darui's FOIA request as required by law.  Thus, Mr. Darui filed this lawsuit on November 6, 2009.  Once the lawsuit was filed, the State Department completed its processing of Mr. Darui's narrowed request.  The government located three items responsive to Mr. Darui's request but declined to release them.  Two of the items have been withheld pursuant to FOIA Exemption 1 and the other has been withheld pursuant to FOIA Exemption 5.

The government has moved for summary judgment on its withholding decisions.  Plaintiff opposes the government's motion.  The government has failed to properly meet its burden of proof in establishing that Exemptions 1 and 5 apply to the responsive

records.  Therefore, defendant's motion for summary judgment should be denied, and the three responsive items should be disclosed to Mr. Darui.

**I. Defendant Has Not Established That The Records Are Properly Classified**

The defendant asserts that two of the responsive documents ("Documents 2 and 3"), described as letters between the State Department and the Ambassador of Saudi Arabia are protected pursuant to Exemption 1 of the FOIA because they are classified "confidential" pursuant to Executive Order 13526 Section 1.4(b) or 1.4(d).  Defendant's Memorandum in Support of its Motion for Summary Judgment ("Defendant's Memorandum") at 7-11.  Defendant relies on the declaration of Margaret Grafeld, the Acting Deputy Assistant Secretary for Global Information Services and the Director of the Office of Information Programs and Services for the State Department, dated August 31, 2010, ("Grafeld Decl.") at ¶¶ 1, 26-35 to justify these classification decisions, and therefore these withholdings.

Under Executive Order 13526, information may not be classified unless "the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage."  Exec. Order 13526, § 1.1 (a) (4).  Further, information may not be classified, continued to be classified or not be declassified to: "(1) conceal violations of law, inefficiency, or administrative error; (2) prevent embarrassment to a person, organization, or agency; (3) restrain competition; or (4) prevent or delay the release of information that does not require protection in the interest of national security."  Id. § 1.7.  Executive Order 13526

4

also has procedural requirements concerning who may classify documents and how the actual classifying of the documents should be done. Id. §§ 1.3 and 1.6.

Initially, defendant has not established that the procedural requirements allowing for classification have been met. Defendant states that its classifying authority in this instance is Margaret Grafeld. Defendant's Memorandum at 8-9; Grafeld Decl. ¶ 1. Ms. Grafeld only states "I am authorized to classify and declassify national security information." Grafeld Decl. ¶ 1. Ms. Grafeld has provided no other evidence that she is an authorized classification authority pursuant to Executive Order 13526. The Executive Order requires that classification authorities receive classification training at least one time in a calendar year. Exec. Order No. 13526 § 1.3(d). Ms. Grafeld offers no proof that she has received this training, which is required to maintain a classification authority.

Further, the Executive Order has specific requirements as to how the documents must be marked so as to qualify as properly being classified. Id., § 1.6. Defendant offers no proof that these requirements have been met; nor has it presented the documents in evidence, either publicly redacted with its administrative markings or *in camera* to the Court. Thus, based on the record presented, the State Department has not established that the procedures it utilized to classify the documents are proper under the current Executive Order.

Defendant next claims this information is properly substantially classified as "confidential" because it is either foreign government information pursuant to §1.4(b) of the Executive Order or concerns U.S. foreign relations pursuant to §1.4(d) of the Executive Order. Grafeld Decl., ¶¶ 31-35.

Government classification decisions receive a great amount of deference. <u>Morley v. CIA</u>, 508 F.3d 1108, 1124 (D.C. Cir. 2007). This circuit has held that if the government's statements concerning exemption claims contain a **reasonable specificity of detail** to demonstrate that the withheld material logically falls within the claimed exemption and the evidence **in the record** does not suggest otherwise, a court should not conduct a more detailed inquiry to test the agency's judgment and expertise. <u>Larson v. Department of State</u>, 565 F.3d 857, 865 (D.C. Cir. 2009). However, "deference is not equivalent to acquiescence." <u>Campbell v. U.S. Department of Justice</u>, 164 F.3d 20, 30 (D.C. Cir. 1998); *see also* <u>Coldiron v. U.S. Dep't of Justice</u>, 310 F. Supp. 2d 44, 53 (D.D.C. 2004) ("[E]ven in Exemption 1 situations, the court is not to be a wet blanket. No matter how much a court defers to an agency, its "review is not 'vacuous'") (internal quotation marks omitted).

Thus, the questions in this case concerning the State Department's use of Exemption 1 quickly boil down to (1) whether the claims that this material is properly classified "confidential" backed up with reasonable specificity of detail to uphold the claim and; (2) whether any evidence in the record circumvents the government's claim that the material is properly marked "confidential." Unfortunately, for the government, the statements offered in support of its classification decisions are not reasonably specific and there is evidence that it has entered into the record suggesting that the government's decision is not proper.

The Government's use of Exemption 1 is supported solely by the declaration of Margaret Grafeld, who is the head of the State Department's FOIA Office. For the invocation of foreign government material (Exec. Order 13526 §1.4(b)), Ms. Grafeld

provides a brief statement as to the general importance of the confidentiality of material obtained from a foreign government.  Grafeld Decl. ¶ 33.  Ms. Grafeld then makes a conclusory statement as to why the State Department believes foreign government material is classified . Id.,¶ 34.  For the invocation of Foreign Relations or Foreign Activities of the United States (Exec. Order 13526 § 1.4(d)), Ms. Grafeld provides only a brief paragraph that notes that the release of the U.S correspondence would cause damage to American relations with a foreign government.  Id.,¶ 35.  Ms. Grafeld then attaches a short description of the two documents.  She describes the document sent to the Saudis ("Document 2") as one that "expresses the United States Government's views concerning the testimony of a Saudi official in connection with a criminal prosecution.  It also addresses a matter concerning archival inviolability under the Vienna Convention on Diplomatic Relations."  Id. at 15.  She describes the document from the Saudi's ("Document 3") as "a reply to the second document… and expresses confidential views of the Kingdom of Saudi Arabia concerning archival inviolability under the Vienna Convention on Diplomatic Relations."  Id., at 16.

     Defendant provides no specific details as to how or why the letters to and from Saudi Arabia could actually result in damage to the national security.[1]  Nor does the defendant provide any description of what the actual damage would be if the document was made public.  It can be seen from the defendant's explanation that the government has merely classified the documents without taking into account their actual content and

---

[1] Ms. Grafeld's declaration omits any explanation as to what "archival inviolability" is, and fails to explain how Saudi Arabia's views on the subject rise to the level of something that should be kept classified so as to protect the foreign relations of the United States of America, especially in light of the fact that Saudi Arabia has been a signatory to the Vienna Convention on Diplomatic Relations for many years.  See http://www.unhcr.org/refworld/docid/3ae6b3648.html (last visited September 28, 2010).

the likely consequence of their release. See, e.g. Campbell, 164 F.3d at 31 (FBI declaration faulted for failing to connect general statements about the content of withheld documents with general standards for classifying information). This conclusion is easily reached, where here, the government has itself introduced evidence that the release of the materials would not cause the catastrophic harm Ms. Grafeld attempts to claim would occur. In moving for summary judgment, the government introduced portions of the transcript from Mr. Dauri's trial where the responsive material was discussed. See Trial Transcript at 83-91. Tejpal Singh Chawla, the Assistant United States Attorney who prosecuted Mr. Darui made a number of statements on the record concerning the two documents that defendant is now attempting to withhold as classified. Initially, Mr. Chawla stated that Mr. Darui's counsel had been permitted to view the responsive material. Id. at 90. More importantly, Mr. Chawla stated that if the material was placed in the public domain, "the Government's not going to shed tears over it." Id. at 89. Thus, at the time the documents were used in the criminal action against Mr. Darui, not only were the documents not classified, the government was not asserting that their public release would cause major problems.[2] These statements, entered into evidence by the defendant, significantly lessen the strength of the conclusory statements made by Ms. Grafeld.

      Thus, the government's failure to provide specific details as to the reasons why this material should be classified, the government's own statements about the material,

---

[2] The fact that the documents were not classified at the time of Mr. Darui's criminal trial is important in that it appears from the record provided by the government that the Court retained a copy of the documents but did not undertake the security precautions that the Department of Justice is required to make for the viewing and storage of classified material by the federal courts. See 28 C.F.R. § 17.46(c).

and the failure to establish that adequate procedures were utilized in classifying the documents demonstrate that the government has not properly established that the responsive material is classified "confidential" under the current Executive Order. As such, this material should be ordered released to plaintiff.

## II. Exemption 5 Does Not Protect the Responsive Documents

Defendant is also withholding one document described as "a series of email messages between attorneys at State and the Department of Justice" pursuant to FOIA Exemption 5 by asserting the deliberative-process privilege, the attorney-work product privilege and the attorney-client privilege. Defendant's Memorandum at 11-14. These three privileges have separate requirements, and as will be demonstrated below, the State Department has failed to establish that any of these three privileges apply to the withheld documents.

### A. Deliberative Process Privilege

For a document to be protected from disclosure pursuant to the deliberative process privilege it must be both predecisional and deliberative. Mapother v. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993) ("The deliberative process privilege protects materials that are both predecisional and deliberative." (citing Petroleum Info. Corp. v. United States Dep't of the Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992))). In determining whether a document is predecisional, an agency must establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process." See Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980). To be "deliberative, a document "must be 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or

policy matters.'" Wilderness Society v. United States Dep't of Interior, 344 F. Supp. 2d 1, 11 (D.D.C. 2004). Most important, "the document must reflect the 'give-and-take of the consultative process.'" Wilderness Society, 344 F. Supp. 2d at 11 (quoting Senate of Puerto Rico, 823 F.2d 574, 585 (D.C. Cir. 1987)).

The burden is placed squarely on the defendant to prove that the privilege applies in its Vaughn index or declarations. Summers v. Dep't of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998); Vaughn v. Rosen, 484 F.2d 820, 823 (D.C. Cir. 1973). For a number of reasons, the declaration of Margaret Grafeld and its attached Vaughn index do not justify the invocation of the deliberative process privilege. The document is described merely as an "email exchange [that] consists of communications between attorneys at the Department of State and Justice that were prepared in connection with a law enforcement proceeding. It contains pre-decisional, inter-agency deliberations conceding international law." Grafeld Decl. at 15. Grafeld adds that the information "contains selected factual material intertwined with opinion." Grafeld Decl., ¶ 37. No further specific description of this document is provided.[3]

This "evidence" does not demonstrate how the documents (i) relate to or assisted in a particular specific decision or decisional process, or (ii) reveal the give-and-take of the defendant's consultative process. Defendant fails to establish what deliberations actually are represented on the withheld documents. The alleged deliberations concerning the withheld documents are not described with any type of specificity as to

---

[3] Defendant cites to the Trial Transcript, at 84 as further description of this document. Defendant's Memorandum at 13. However, the transcript does not describe the withheld document, it only describes an issue in Mr. Darui's trial and at no point in its papers does defendant establish that these emails concern this issue.

allow how the documents related to or assisted in a deliberative process. Nor is any description given that demonstrates that the withheld documents were part of an agency's give-and take in a decisionmaking process. In fact, defendant does not explain who the decision maker was and if and when a final decision was actually made. Clearly, none of these so-called justifications provide any information that would enable the reader to determine what decision or decisional process the withheld material assisted in. See Nat'l Resources Defense Council v. Dep't of Defense, 388 F. Supp. 2d 1086, 1103-04 (C.D. CA 2005); Judicial Watch v. United States Post. Serv., 297 F. Supp. 2d 252, 259-265 (D.D.C. 2004).

Additionally, much of the material withheld pursuant to the deliberative process privilege may likely be factual. Purely factual material is not appropriate for withholding under this privilege. EPA v. Mink, 410 U.S. 73, 91 (1973); Coastal States, 617 F.2d at 867. While factual material may be protected if it is intertwined within a deliberative process, see Montrose Chem. Corp. v. Train, 491 F.2d 63, 71 (D.C. Cir. 1974), the descriptions of the material at issue by defendant do not describe how this factual information is actually intertwined with opinion in such a way to make the factual material not releasable. For instance, this document is described as an email. Logically, an email would contain headers with dates, the names of the authors of the emails as well as the names of the recipients. It is unclear how this is intertwined with the deliberative material. Additionally, text describing the actual issue would be factual. Absent any further information, this factual information is not appropriate for withholding pursuant to the deliberative process privilege.

Defendant has clearly failed to establish that the deliberative process privilege applies to the contested material in this case. This material should be released to plaintiff.

### B. Attorney-Work Product

Defendant also attempts to withhold the emails pursuant to the attorney-work product privilege. The attorney-work product protects information prepared by an attorney in contemplation of litigation. See Hickman v. Taylor, 329 U.S. 495, 509-10 (1947); Fed. R. Civ. P. 26(b)(3).

Defendant provides no details as to how the attorney-work product privilege applies to the withheld documents. As it did with the deliberative process privilege, defendant does not provide specific details that explain how these emails meet the requirements of the attorney-work product privilege. There is no discussion of who the attorneys actually are, what offices they represent as attorneys, and what relationship they have to the underlying legal proceedings. As such, defendant has clearly failed to establish that this privilege applies to the withheld document.

### C. Attorney-Client Privilege

Finally, the government attempts to withhold the emails pursuant to the attorney-client privilege. As with its use of the deliberative process privilege and the attorney-work product privilege, defendant has failed to establish any of the elements required for asserting this privilege. The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." See Mead Data Center, Inc. v. United States Dep't of the Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977). Defendant has not

established that this privilege applies to these documents.  Defendant has failed to show that there was a confidential communication within the attorney-client relationship.  Confidentiality may be inferred when the communications suggest that the "government is dealing with its attorneys as would any private party seeking advice to protect personal interests."  Coastal States Gas, 617 F.2d at 863.  However, the sketchy descriptions laid out in defendant's Vaughn index do not provide enough information to even infer confidentiality.  For example, defendant never actually explains who the actual attorneys are that they claim are providing the legal advice on these documents, nor is it ever explained who the client seeking the advice is.

Moreover, the Vaughn index tells the plaintiff and this Court nothing about whether or not these communications were treated in a confidential manner.  The e-mails concern an issue that involves a foreign country.  It is difficult to believe these communications were meant to be kept confidential when the underlying issue was discussed with a number individuals in both the United States and Saudi Arabia.  Thus, it is simply not possible to infer confidentiality of these alleged attorney-client communications without further information from defendant.

Finally, if otherwise confidential agency memoranda are merely authoritative interpretations of agency law, they cannot be protected pursuant to this privilege.  Tax Analysts v. IRS, 117 F.3d 607, 619-20 (D.C. Cir. 1997).  Defendant has not established that these statements on these e-mails are not merely interpretations of agency law.  Thus, for all the reasons provided above, defendant has not established that the attorney-client privilege has properly been invoked in the records at issue.

Defendant has not met its burden of proof to establish that the e-mails it has withheld are protected from disclosure pursuant to FOIA Exemption 5 pursuant to any of the three privileges it has invoked. As such, defendant should be ordered to release these e-mails.

### III. Defendant Has Failed to Follow Segregate the Responsive Records

Finally, defendant claims that all reasonably segregable information has been released. Defendant's Memorandum at 14-15; Grafeld Decl.at 17. However, defendant has not fully met its burden in establishing that all segregable information was released. In order to justify that no documents withheld in full can be segregated, an agency must demonstrate that the "exempt and nonexempt information are 'inextricably intertwined,' such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." Mays v. Drug Enforcement Administration, 234 F.3d 1324, 1327 (D.C. Cir. 2000) (quoting Neufeld v.IRS, 646 F.2d 661, 666 (D.C. Cir. 1981)) (other citation and internal quotation marks omitted). Grafeld merely states that "[a]ll of the documents addressed herein have been carefully reviewed for reasonable segregation of non-exempt information, and I have determined that no segregation of meaningful information in the withheld documents can be made . . ." Grafeld Decl. at 17. Defendant provides no other facts on how it reviewed the documents to ascertain that documents were not segregable. Grafeld does not explain why the markings making the two classified documents cannot be segregated and released, nor does she explain why the email header information (date, to, from, subject) cannot be segregated and released in the material withheld pursuant to Exemption 5. These omissions are determinative that summary judgment on the issue of segregability

should be denied to Defendant.  See Durrani v. United States Department of Justice, 2007 WL 755219 at *8 (D.D.C. March 24, 2009).

Finally, both the defendant and the Department of Justice, who is responsible for representing defendant in this matter, have not followed government policy in withholding documents in this matter.  The President and the Attorney General have issued policy statements about the FOIA, and the Attorney General has stated agencies should not withhold records simply because a FOIA exemption applies and that the Department of Justice will defend agencies "only if (1) the agency responsibly foresees that disclosure would harm an interest protected by one of the statutory exemptions or (2) disclosure is prohibited by law."  FOIA Memorandum of Attorney General Holder dated March 19, 2009 (located at http://www.usdoj.gov/ag/foia-memo-march2009.pdf last visited September 28, 2010).  As much of the withheld material should be released by defendants under this standard, defendant has not followed the governments own policies in defending this action.

## CONCLUSION

Defendant has failed to meet its burden of proving that it properly withheld the records at issue in this matter.  Accordingly, defendant's motion for summary judgment should be denied and these records should be disclosed to plaintiff.

Dated:  October 22, 2010                                        Respectfully Submitted,


_____/s/_____
Scott A. Hodes, D.C. Bar #430375
P.O. Box 42002
Washington, D.C.  20015
301-404-0502
413-641-2833 (fax)

Attorney for Plaintiff