UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FARZAD DARUI, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    Civil Action No. 09-02093 (ABJ) <br> ) |
| UNITED STATES DEPARTMENT OF STATE, | ) <br> ) <br> ) <br> ) |
| Defendant. | ) <br> ) |

## MEMORANDUM OPINION

Plaintiff Farzad Darui brought this action against the United States Department of State seeking the release of documents under the Freedom of Information Act. Defendant has moved for summary judgment. Upon consideration of the motion, plaintiff's opposition, the Court's own review of the documents themselves, and the entire record of the case, the Court will grant defendant's motion.

**I.**    **Background**

Plaintiff Farzad Darui was the business manager of the Islamic Center (the "Center") in Washington D.C., and his responsibilities included paying the Center's invoices by mailing checks to its various vendors. *United States v. Darui*, Criminal No. 07-00149 (RCL), Compl. ¶¶ 5, 8 (D.D.C. Oct. 12, 2006) ("Crim. Compl."). On October 12, 2006, the United States filed criminal charges against Darui in this Court, alleging that Darui had altered the payee line on multiple checks intended for the Center's vendors and had instead deposited them to a bank account held by a corporation in which he was the chief executive officer. *Id*. ¶¶ 8–11. The government charged him with mail fraud and interstate transportation of stolen property. *Id*. ¶ 2.

During the course of plaintiff's criminal trial, the government made known its intention to call a witness who worked for the Royal Embassy of Saudi Arabia (the "Embassy"). Def.'s Mot. for Summ. J., Ex B, *United States v. Darui*, Criminal No. 07-00149 (RCL), Trial Transcript at 83 (D.D.C. May 19, 2008) ("Crim. Tr."). Before the witness testified, the Court reviewed two letters under seal between the Department of State ("State" or "defendant") and the Ambassador of Saudi Arabia concerning a limited waiver of sovereign immunity for the Embassy witness under the Vienna Convention on Diplomatic Relations. Crim. Tr. at 84, 89. The limited waiver of sovereign immunity authorized the witness to testify in the criminal proceedings against plaintiff about certain documents he saw while working at the Embassy. *Id.* at 85. The Court reviewed the letters, and on May 19, 2008, the Court directed that they be shown to plaintiff and his defense counsel for purposes of limiting the scope of cross-examination. *Id.* at 88−90. The Court also placed the documents and any further discussion of them under seal. *Id*. at 89–90.

On June 17, 2008, plaintiff submitted a document request to State under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Declaration of Margaret P. Grafeld ("Grafeld Decl.") ¶ 4. The initial request sought all documents collected and maintained by State regarding plaintiff. *Id.* On October 2, 2008, plaintiff narrowed his FOIA request to three sets of documents. *Id.* ¶ 10. These categories are: (1) communications between State and the Department of Justice ("DOJ") in May 2008 regarding plaintiff; (2) any communications between State and the Embassy regarding plaintiff between August 2006 and October 2008; (3) any communications between State and the Islamic Center of Washington, D.C. regarding plaintiff between August 2006 and October 2008. *Id*. Upon receiving the narrowed request, State asserts that it initiated a comprehensive search of the Central Foreign Policy Records, the

Bureau of Near Eastern Affairs, the Office of the Legal Advisor, and the United States Embassy in Riyadh. Def.'s Mem. in Support of Mot. for Summ. J. ("Def.'s Mem.") at 4.

On November 6, 2009, plaintiff filed this action seeking a court order requiring the release of all responsive records under FOIA. Compl. ¶ 1. On March 17, 2010, defendant informed plaintiff that its search of the Central Foreign Policy Record, the Bureau of Near Eastern Affairs and the Office of the Legal Advisor had resulted in three responsive documents. Grafeld Decl. ¶ 16, Ex. 12. The March 17 correspondence further explained that State was withholding all three documents, in full, pursuant to FOIA Exemption 1 (properly classified materials authorized to be kept secret in the interest of national defense and foreign policy), Exemption 5 (inter- or intra-agency memoranda which would not be available by law to a party other than an agency in litigation with the agency), and Exemption 7(A) (records or information compiled for law enforcement purposes, the production of which could reasonably be expected to interfere with enforcement proceedings). *Id*. On April 8, 2010, State wrote plaintiff again, notifying him that it had completed its search of the United States Embassy at Riyadh and had located no further responsive documents. *Id.* ¶ 17, Ex. 13.

On May 3, 2010, State wrote plaintiff a third time. Def.'s Mot. for Summ. J., Ex. C. The letter included a *Vaughn* index that described the three responsive documents and explained the FOIA exemptions under which they were being withheld. *Id.* at 2–3. The *Vaughn* index explained that Document 1 consisted of a series of emails between attorneys at State and the Department of Justice and was being withheld pursuant to FOIA Exemptions 5 and 7(A). *Id.* at 2. Document 2 was described as a letter from an official at State to the Ambassador of Saudi Arabia, and Document 3 was a letter from the Ambassador of Saudi Arabia to the United States.

*Id.* at 2–3. The May 3 letter also informed plaintiff that Documents 2 and 3 were being withheld in full pursuant to FOIA exemptions 1 and 7(A). *Id.*

Meanwhile, the government's criminal case against plaintiff resulted in a hung jury; thereafter, the government moved to dismiss the criminal charges. Def.'s Mot. for Summ. J., Ex. A at 18, 29. On August 16, 2010, the Court granted the government's motion. *Id.* State then informed plaintiff that it would no longer assert an exemption of the responsive documents under FOIA Exemption 7(A) but that it would continue to withhold Document 1 under Exemption 5, and withhold Documents 2 and 3 under Exemption 1. Def.'s Mem. at 5.

On September 17, 2010, defendant State moved for summary judgment pursuant to Fed. R. Civ. P. 56. Attached to the motion is the Declaration of Margaret P. Grafeld, the Acting Deputy Assistant Secretary for Global Information Services and the Director of the Office of Information Programs and Services of the Department of State. Grafeld Decl. at 1.

On June 30, 2011, the Court directed defendant to produce the three documents at issue to chambers for *in camera* inspection to assist the Court in making a responsible *de novo* determination.

## II. Standard of Review

The purpose of the Freedom of Information Act, 5 U.S.C. § 552, is to require the release of government records upon request. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). "Yet Congress realized that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621

(1982). These exemptions "must be narrowly construed," *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976), while still "hav[ing] meaningful reach and application," *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). Congress's aim with FOIA was to establish a balance between the public's right to know and the need for the government to protect sensitive information. *See id.*

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009) (citations omitted). Fed. R. Civ. P. 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

"In a FOIA case, a court may award summary judgment solely on the basis of information provided by the agency in declarations" in certain circumstances. *Moore*, 601 F. Supp. 2d at 12. Those circumstances exist when the declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

The district court must "determine the matter *de novo*, and . . . the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *see also Military Audit Project*, 656 F.2d

at 738. The court has the discretion to conduct an *in camera* review of the withheld material in order to make a responsible *de novo* determination on the claims of exemption. *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978). But, "in conducting *de novo* review in the context of national security concerns, courts 'must accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record.'" *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007), quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984). The Court must be aware "that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm." *Halperin v. CIA*, 629 F.2d 144, 149 (D.C. Cir. 1980). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf*, 473 F.3d at 374–75.

### III. Analysis

#### A. Document 1 is Properly Withheld Pursuant to FOIA Exemption 5

FOIA Exemption 5 provides for withholding "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Put another way, Exemption 5 provides for the protection of information "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). "To qualify as exempt under [Exemption 5], a document must meet two conditions: '[1] its source must be a Government agency, and [2] it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it.'" *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 733 (D.C. Cir. 2008), quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n.*, 532 U.S. 1, 8 (2001). The Court has determined that Document 1 meets both conditions.

Plaintiff does not dispute that Document 1 is a series of email exchanges between attorneys for the Department of Justice and for the Department of State. *See* Grafeld Decl. at 14–15; Pl.'s Opp. at 9. However, plaintiff asserts that defendant has failed establish the second element – that the information would be subject to privilege in the normal course of civil litigation discovery.

To qualify for protection under the attorney work-product doctrine, the material in question must (1) be a document or tangible thing, (2) which was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for its representative. *See* Fed. R. Civ. P. 26(b)(3)(A) ("[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney. . . )."). Moreover, "[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5." *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997).

The test for whether a document was prepared "in anticipation" of litigation is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *Wright & Miller*, 8 Fed. Prac. & Proc. Civ. § 2024 (emphasis added). *See also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) ("[W]here an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product.")

Here, Grafeld's declaration establishes each of the elements of attorney work product. First, the materials in question are documents – a series of emails. Grafeld Decl. at 14. Second, the emails "were prepared in connection with a law enforcement proceeding." *Id.* at 15. The emails are dated May 5–7, 2008, which was two weeks before the Court heard arguments in the underlying criminal case regarding Saudi Arabia's partial waiver of sovereign immunity. Given both the subject matter of the emails and the timing, and in light of the Court's own review of the material, it is clear to the Court that the government attorneys were "focusing upon specific events," and "a specific party," thus "ha[ving] litigation sufficiently 'in mind'" for the documents to qualify as attorney work product. *SafeCard Servs.*, 926 F.2d at 1203. Third, Grafeld's declaration establishes that the emails were prepared by attorneys for DOJ and State. Grafeld Decl. at 15. The attorneys from DOJ were representing the United States in the criminal case against the plaintiff, so the emails qualify as being prepared "by or for another party or its representative (including the other party's attorney. . . )." Fed. R. Civ. P. 26(b)(3)(A).

Plaintiff argues that defendant fails to specify "how the attorney-work product privilege applies to the withheld documents." Pl.'s Opp. at 12. He also argues that "[t]here is no discussion of who the attorneys actually are, what offices they represent as attorneys, and what relationship they have to the underlying legal proceedings." *Id.* The Court's review of the documents satisfies the Court that the exchange specifically involved the prosecuting attorneys in plaintiff's criminal case, and that they were prepared in anticipation of the sovereign immunity hearing. Grafeld Decl. at 15. Thus, Grafeld's declaration is sufficient to establish the "logical" or "plausible" conclusion, see *Wolf*, 473 F.3d at 375, that emails between attorneys at DOJ and State discussing plaintiff's hearing on sovereign immunity fall within the attorney work product privilege. Viewing the evidence in the light most favorable to the nonmoving party, it is evident

to the Court that these emails would not have been discoverable in the course of plaintiff's criminal trial and therefore properly withheld under Exemption 5.

Defendants also argue that Document 1 falls within attorney-client and deliberative process privileges. However, the Court need not reach these arguments, given the conclusion that Document 1 is protected by attorney work-product privilege, and is therefore properly withheld under Exemption 5.

### B. Documents 2 and 3 Are Properly Withheld Pursuant to FOIA Exemption 1

FOIA Exemption 1 provides that disclosures do not apply "to matters that are (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact actually classified pursuant to such an Executive order." 5 U.S.C. § 552(b)(1). The Court will grant defendant's motion for summary judgment because defendant has established the requirements of nondisclosure under Exemption 1, and because plaintiff cannot show that defendant waived the right to invoke Exemption 1.

*1. Defendant Properly Classified Documents 2 and 3 In Accordance With Executive Order 13526*

On December 29, 2009, President Obama issued Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009), which replaced Executive Orders 13292 and 12958. Information is subject to classification under Executive Order 13526 if it meets the following conditions:

(1) an original classification authority is classifying the information;

(2) the information is owned by, produced by or for, or is under the control of the United States Government;

(3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and

(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to

9

> the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order No. 13,526, § 1.1(a). The Court has determined that defendant has established each of these elements.

First, Grafeld's declaration establishes that she is a proper classifying authority. Grafeld Decl. ¶ 1. Plaintiff's attempt to refute this fact is unpersuasive. Plaintiff proffers no evidence to support his contentions that Grafeld lacks the authority to classify information, that Grafeld is perjuring herself in her declaration, or that she has failed to comply with the Executive Order's requirements for classification authority. *See* Pl.'s Opp. at 5.

Second, plaintiff does not refute that Documents 2 and 3 – diplomatic cables between the governments of the United States and Saudi Arabia – are "owned, produced by or for, or under . . . the control of the United States Government." Exec. Order No. 13,526, § 1.1(a)(2).

Third, Documents 2 and 3 meet the requirements of section 1.4 of Executive Order 13526. Section 1.4 details seven categories of information that may be considered for classification. It includes information that relates to "foreign relations or foreign activities of the United States, including confidential sources." Exec. Order No. 13,526, § 1.4(d). Grafeld stated in her signed, sworn declaration that Documents 2 and 3 "concern U.S. foreign relations, specifically, correspondence with a foreign government on a matter regarded by that government as sensitive, namely, archival inviolability under the Vienna Convention on Diplomatic Relations." Grafeld Decl. ¶ 35. The Court's review of the documents bears out this description.

Moreover, section 1.4(b) of the Executive Order permits classifying "foreign government information." Exec. Order No. 13,526, § 1.4(b). Section 6.1(s) of the Executive Order defines the term foreign government information as "information provided to the United States Government by a foreign government . . . with the expectation that the information, the source of

the information, or both, are to be held in confidence." *Id.* § 6.1(s). Grafeld declared that Document 3 was "obtained in confidence from a foreign government . . . . Diplomatic exchanges are premised upon, and depend upon, an expectation that confidentiality will be observed." Grafeld Decl. ¶ 33. Thus, Document 2 falls within category 1.4(d). And Document 3 – the letter from the Ambassador of Saudi Arabia to the United States – falls within categories of information listed in Sections 1.4(b) and 1.4(d).

Finally, Grafeld determined that the disclosure of Documents 2 and 3 "reasonably could be expected to result in damage to the national security." Exec. Order No. 13,526, § 1.1(a)(4). Regarding both Documents 2 and 3, Grafeld stated that "[t]he inability of the United States to maintain confidentiality in its diplomatic exchanges would inevitably chill relations with other countries. It would damage national security by diminishing our access to vital sources of information." Grafeld Decl. ¶ 33. *See also id.* ¶ 35 ("The release of this information could reasonably be expected to cause damage to U.S. relations with a foreign government that expects diplomatic relations to be conducted in confidence."). Furthermore, the disclosure of Document 3, which qualifies as foreign government information, "is presumed to cause damage to national security." Exec. Order No. 13,526, Section 1.1(d). Grafeld stated that this presumption holds true here. *See* Grafeld Decl. ¶ 34.

Plaintiff argues that defendant has failed to claim a reasonable degree of specificity, that evidence in the record controverts defendant's claims, and that Documents 2 and 3 were not classified at the time of his criminal trial. Pl.'s Opp. at 7–8. The Court rejects these arguments. On the one hand, Plaintiff acknowledges that "[g]overnment classification decisions receive a great amount of deference." Pl.'s Reply at 6 (citing *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007)). But immediately thereafter, plaintiff argues that defendant has failed to specify the

actual harm that would result from disclosure. As plaintiff's own cited authority recognized, "the text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified." *Morley*, 508 F.3d at 1124. Here, as in *Morley*, plaintiff's "argument for declassification does not overcome the '*substantial weight*' the court must accord 'to an agency's affidavit concerning the details of the classified status of the disputed record.'" *Id.*, quoting *Military Audit Project*, 656 F.2d at 738.

Second, plaintiff argues that the government's actions during the criminal proceedings undermine any deference to be accorded to the government's decision to withhold the documents. Pl.'s Opp. at 8. It is true that the Assistant United States Attorney ("AUSA") involved in plaintiff's criminal case commented at the sovereign immunity hearing that "if the material was placed in the public domain, 'the Government's not going to shed tears over it.'" *Id.*, quoting Crim. Tr. at 90. But at the same time, the government sought to have Documents 2 and 3, as well as any discussion of them, placed under seal, and the Court granted that request. *See* Crim. Tr. at 89:25–90:4. Thus, while the records were disclosed to the plaintiff's counsel during proceedings related to the criminal trial, the government never consented to their release into the public domain. Moreover, the AUSA does not have the authority to classify or de-classify the documents, played no role in their classification, and does not work for State, the party in this action seeking nondisclosure. In sum, the AUSA's single offhand remark is insufficient to overcome the substantial weight due to the Grafeld declaration.

The fact that plaintiff viewed Documents 2 and 3 during his criminal trial does not undermine the government's position under the circumstances in this case. Viewing documents under seal as a litigant is different than requesting the same documents as a member of the public under FOIA. The Court concluded in the criminal trial that plaintiff – as a criminal defendant in

the underlying proceeding – deserved access to Documents 2 and 3 in order to understand the limits of the waiver of sovereign immunity that would apply to the Embassy witness. But those documents were under seal, which prevents the public from viewing them. *See Morgan v. U.S. Dep't of Justice*, 923 F.2d 195, 197 n.2 (D.C. Cir. 1991) ("Fed. R. Civ. P. 26(c) . . . gives the court the discretion both to place documents in the court record under seal and to issue detailed protective orders prohibiting disclosure of documents obtained through discovery.") There would be no such restrictions if the government were to produce the documents pursuant to FOIA; the statute establishes the "*public*[*'s*] right to secure such information." *John Doe Agency*, 493 U.S. at 151 (emphasis added). Moreover, the documents at issue were subsequently classified in accordance with Executive Order 13526, Section 1.1(a). Therefore, the fact that plaintiff viewed the documents under seal at one time does not entitle the public to broad access to classified documents now.

Finally, plaintiff argues the current classified status of Documents 2 and 3 is deficient because they were not classified at the time of his criminal trial. Pl.'s Opp. at 8 n.2. Again, the Court points out that while the documents were revealed to the plaintiff during the trial, they have never been disclosed to the public. And Executive Order 13526 allows for the classification of national security information after it has been requested under FOIA.

> Information that has not previously been disclosed to the public under proper authority may be classified . . . after an agency has received a request for it under the Freedom of Information Act . . . only if such classification meets the requirements of this order and is accomplished on a document-by-document basis with the personal participation or under the direction of the agency head, the deputy agency head, or the senior official designated under section 5.4 of this order.

Exec. Order No. 13,526, § 1.7(d). Grafeld's declaration establishes the defendant's compliance with section 1.7(d).

## 2. Defendant Has Not Waived Its Right to Classify Documents 2 and 3

In rare circumstances, actions by the government may waive its ability to withhold information sought under FOIA. However, the stringent test for waiver of a FOIA exemption has not been met in the instant case.

"[A]lthough an agency bears the burden of proving that a FOIA exemption applies to a given document, a plaintiff asserting that information has been previously disclosed bears the initial burden of pointing to the specific information in the public domain that duplicates that being withheld." *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 201 (D.C. Cir. 1993), citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983). "[FOIA] bars the courts from prying loose from the government even the smallest bit of information that is properly classified." *Afshar*, 702 F.2d at 1130.

The D.C. Circuit has held that "when information has been 'officially acknowledged[]' its disclosure may be compelled even over an agency's otherwise valid exemption claim." *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990). The Court identified three requirements to determine whether the government has waived its right to withhold the sought information by officially acknowledging it:

> First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed . . . . Third, . . . the information requested must already have been made public through an official and documented disclosure.

*Fitzgibbon*, 911 F.2d at 765, citing *Afshar*, 702 F.2d at 1133.[1]

---

1   In *Afshar*, the Court denied a claim of waiver for requested information that appeared in books written by former C.I.A. agents and in documents previously released by the C.I.A., State, and the F.B.I. 702 F.2d at 1132–35. The Court reasoned that the statements in the book failed to meet the "official and documented disclosure" element and the released documents were either less specific than the requested information or contained information that was sufficiently different. *Id.* In *Fitzgibbon*, the court denied the plaintiff's allegation of waiver even when the information sought – the location of a C.I.A. station – had been disclosed in a congressional

Here, plaintiff is able to establish that Documents 2 and 3 meet the first and second elements of a waiver argument. Identical copies of Documents 2 and 3 were made available to plaintiff in his criminal trial, thus meeting the required level of specificity. However, plaintiff cannot establish the third element. Documents 2 and 3 were placed under seal in the criminal proceedings, and therefore, there has been no official, documented, *public* disclosure that could form the predicate for a waiver.

## IV. Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment. A separate order will issue.

/s/ Amy B. Jackson
AMY BERMAN JACKSON
United States District Judge

DATE: July 11, 2011

---

committee report because the congressional report related to events from a different time period. 911 F.2d 755, 765–66.